## CLEVELAND RETAIL GROCERS' ASSN. v. SARAH A. EXTON ET. AL.

1. WHEN INNUENDO TO BE TAKEN AS EXPRESSING MEANING ASCRIBED TO IT.

If the words of the publication are reasonably susceptible of the meaning ascribed to them in a petition for libel, then the innuendo shall be taken as expressing the meaning so ascribed, until something else occurs.

**2. INNUENDO TO BE GATHERED FROM THE WORDS "DELINQUENT BOOK ISSUED BY THE CLEVELAND RETAIL GROCERS' ASSOCIATION."**

The innuendo to be gathered from the words, in a book or pamplet, published by a retail grocers' association, organized for the purpose of collecting bad debts, and called "Delinquent Book," means that the pages following contain the names of persons whom said association has found to be dishonest and unworthy of credit.

**3. INNUENDO GATHERED FROM WORDS RELATING TO SOURCE OF INFORMATION CONTAINED IN SUCH BOOK.**

The meaning to be gathered from the words, referring to the Delinquent Book, "It is compiled from the reports of delinquent customers, furnished by members of the association, and contains the names of people who have, in the past, failed to pay their grocery bills and are unworthy of credit," is, that the persons whose names are printed therein are persons who have actually defrauded members, by whom their names were furnished, or have been guilty of some other act whereby they have forfeited the respect and confidence of the community where they resided.

**4. INNUENDO GATHERED FROM MATTER REFERRING DIRECTLY TO PLAINTIFF.**

A fair construction of a publication in such book of the words and figures "546c——Exton——Outhwaite street, housekeeper,—— $7.17," is that a person of that name, residing on that street, and by occupation a housekeeper, was the person referred to, and any one reading the book would so understand, although the full name was not given, and would understand that such person had failed to pay her grocery bill and was unworthy of credit; and would tend to disgrace such person in the estimation of those who read the book.

**5. WHEN LIBEL WILL LIE, WITHOUT SPECIAL DAMAGE IS ALLEGED.**

Although the matter published might not, without averment and proof of special damage, be actionable, if only spoken, yet if published, and it be of a character which, if believed, would naturally tend to expose the person concerning whom the same was published, to public hatred, contempt or ridicule, or deprive him of the benefits of public confidence or social intercourse, such publication is a libel, and an action will lie therefor, although no special damage is alleged.

ERROR to the Court of Common Pleas of Cuyahoga county.

MARVIN, J.

The Cleveland Retail Grocers' Association v. Sarah A. Exton et al., is a proceeding in error seeking to reverse the judgment obtained by Sarah A. Exton against The Cleveland Retail Grocers' Association in the court of common pleas.

Certain questions in this case have already been disposed of, and there remains only one question and that is the question, whether under the petition in this case any evidence should have been admitted, whether there is a petition here, which, if true, entitled the plaintiff below to a recovery.

The petition alleges that Sarah A. Exton, the defendant in error is a housekeeper in this city, residing on Outhwaite avenue; that she keeps a lodging and boarding house. That the plaintiff in error is a corporation, and that, for the purpose of injuring her in her reputation, it made a publication about her; that that publication was contained in a book, about two thousand copies of which were printed and circulated among the members of the association and others. That the Retail Grocers' Association is organized for the purpose of, and is engaged in the business of collecting bad debts for retail grocers. That it publishes a book or pamphlet which it calls its "Delinquent Book." That on the cover of that book issued by the said Retail Grocers' Association, these words are

printed, "Delinquent Book, issued by The Cleveland Retail Grocers' Association."

On the first page of the book is this: "It" (meaning the book) "is compiled from the reports of delinquent customers furnished by members of the association and contains the names of people who in the past have failed to pay their grocery bills and are unworthy of credit."

On the same page is this: "Throughout the list the figures in the first column are for convenience of secretary in tracing to the proper creditor. The address, occupation and amount owed appear, as furnished the compilers."

And on the eleventh page of this book, the following appears: "546c ———Exton, ——— Outhwaite street, housekeeper, —— $7.17."

Sarah A. Exton says that that publication injured her and was maliciously made.

The petition alleges that this book is circulated in Cleveland and neighboring cities.

The *innuendo* as to the first part of the publication to which attention is called, the pleader has expressed in these words, and that is, the printed words: "Delinquent Book issued by the Cleveland Retail Grocers' Association,"—meaning that the pages following contained the names of persons whom said association had found to be dishonest and deceitful and unworthy of credit and who had been guilty of fraudulently and dishonestly evading and refusing to pay their just debts.

It is settled in this state, settled in an authority to which attention will be later called, that if the words of the publication are reasonably susceptible of the meaning ascribed to them in a petition for libel or slander, then the *innuendo* shall be taken as expressing the meaning so ascribed, until something else occurs.

The second printed matter in the book, complained of is, as has been already read: "It" (meaning the book) "is compiled from the reports of delinquent customers furnished by members of the association and contains the names of people who in the past have failed to pay their grocery bills and are unworthy of credit."

The *innuendo* in this is alleged as meaning that the persons whose names were printed on the pages following were persons who had actually defrauded the members by whom their names had been furnished to the association or had been guilty of some other act that disentitled them to the respect and confidence of the community wherein they resided.

And then follows the words which have been read, to show that the name of this defendant in error was so published in that book among that list of delinquents.

It is true that the name in full is not given, but only the word "Exton" preceded by the "number 546c." The residence is given as "Outhwaite street," "housekeeper" her occupation—she being a housekeeper. She says that she is a housekeeper and that association meant her when they used the words which are last quoted.

It was urged here that the words did not necessarily mean the plaintiff below, this defendant in error.

We think the *innuendo* is one that may very well express the true meaning, the plaintiff living on that street and having that name, could well understand that she was meant, and anyone reading that book would well understand that she was the person intended.

Are these other words susceptible of the meaning attributed to them in the *innuendo?* "Delinquent Book issued by The Cleveland Retail

Grocer's Association?"    May that fairly mean that the pages in that part of the book contained "the names of persons whom said association had found to be dishonest."

It was a delinquent book.  A "delinquent" is defined in Webster's dictionary to be one failing in duty, offending by neglect of duty.  The second definition is:  "One who fails to perform his duty; an offender or transgressor; one who commits a fault or crime."

The words are fairly susceptible of the meaning attributed to them in this *innuendo*.

In any event, the book contained the words, "It is compiled from the reports of delinquent customers furnished by members of the association and contains the names of people who in the past have failed to pay their grocery bills and are unworthy of credit."

We think a fair construction of this publication is as ascribed to it by this petition, and was that this publication was in substance that Sarah A. Exton, residing on Outhwaite street, was one, who in the past had failed to pay her grocery bill and was unworthy of credit.  And we think that such publication would naturally tend to disgrace her in the eyes of those who read it.

Now, is that libelous?

In the case of State v. Smily, 37 O. S., 30, this language is used, in the syllabus:  "Where the language complained of as libelous will bear the meaning ascribed to it by the *innuendo,* whether such was the meaning intended, is a question of fact for the jury.

Remembering that the question before us is, as to whether this petition set out or made any statements which entitled the plaintiff to have a jury pass upon the case, we think that as we have already said, the language is susceptible of the meaning ascribed to it by the *innuendo* and that entitled the plaintiff below to have the matter submitted to a jury.

In the opinion of Judge Boynton in State v. Smily, *supra,* on page 33, we read:

"The general current of authority is to the same effect, holding that although the matter published might not, without averment and proof of special damage, be actionable, if only spoken, yet if published, and it be of a character, which, if believed, would naturally tend to expose the person concerning whom the same was published, the public hatred, contempt, or ridicule, or deprive him of the benefits of public confidence or social intercourse, such publication is a libel, and an action will lie therefor although no special damage is alleged."

That is to say, if it will do any one of these things, if it will injure the party about whom the publication is made, in any one of these particulars, if it will expose him to ridicule and contempt, or deprive him of the benefits of public confidence or social intercourse, such publication is a libel, and an action will lie therefor although no special damage is alleged.

Now, when it is published of one in those exact words, that the one about whom the publication is made is one who in the past has failed to pay his grocery bills and is unworthy of credit, it can hardly be said it does not deprive him of public confidence, to say that he is unworthy of credit, unworthy of public confidence.

In the above opinion, there are quotations made from a very considerable number of authorities, and with approval.  Among others, this quotation is made; Cropp v. Tilney, 3 Salk., 226, Lord Holt:  "Scandalous matter is not necessary to make a libel.  It is enough if the defendant in-

duces an ill opinion to be had of the plaintiff, or to make him contemptible or ridiculous."

In Shipley v. Todhunter, 7 C. & P., 600, Chief Justice Tindal says.: "Any written communication which bears on the face of it any charge, or which tends to villify another, is a libel."

In Woodward v. Dowsing, 2 M. & R., 74: "Any written publication which tends to disgrace, is actionable."

In Newall on Defamations, page 43, a number of American cases are cited in support of the same, and this language is used:

"Any written words are defamatory which impute to the plaintiff that he has been guilty of any crime, fraud, dishonesty, immorality, vice or dishonorable conduct, or has been accused or suspected of any such misconduct; or which suggests that the plaintiff is suffering from any infectious disorder; or which have a tendency to injure him in his office, profession, calling or trade. And so, too, are all words which hold the plaintiff up to contempt, hatred, scorn or ridicule, and which would, by thus engendering an evil opinion of him in the minds of right-thinking men, tend to deprive him of friendly intercourse and society."

Again, we find this language: "Every thing written or printed which reflects on the character of another, and is published without lawful justification or excuse, is a libel, whatever the intention may have been."

From these authorities and other authorities, many cited in these, we are of the opinion that the petition states facts sufficient to entitle the plaintiff to a recovery.

And that disposes of all the questions in the case.

The judgment is affirmed.

*Smith & Blake* and *W. W. Boynton,* counsel for plaintiff in error.

*Wm. Howell* and *Hackney & Johnson,* counsel for defendants in error.